IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRIAN W. SCHRADER,
                Plaintiff,

v.                                        Case No. 2:19-cv-2387

EMPORIA STATE UNIVERSITY,
RAY LAUBER, DAVID CORDLE,
LISA MORITZ, MAX McCOY
and ALLISON GARRETT,
                Defendant.

## COMPLAINT

The Plaintiff, Brian W. Schrader, by and through undersigned counsel, states as and for his Complaint in this action:

### PARTIES, JURISDICTION AND VENUE

1. The Plaintiff, Brian W. Schrader, is and was at all times material hereto, a resident of the state of Kansas.

2. The Defendant, Emporia State University is an institution of higher education established under the laws of the state of Kansas. The University may be served through the President of the University, Allison Garrett at Emporia State University, Plumb Hall 202K, Emporia, Kansas 66801.

3. The Defendant Ray Lauber is an individual employed by Emporia State University, is sued in his personal capacity and may be served at Emporia State University, Plumb Hall 211, Emporia, Kansas 66801.

4. The Defendant David Cordle is an individual employed by Emporia State University, is sued in his personal capacity and may be served at Emporia State University, Plumb Hall 205, Emporia, Kansas 66801.

1

5. The Defendant Lisa Moritz is an individual formerly employed by Emporia State University, is sued in her personal capacity and may be served at 2518 W. View Drive, Emporia, Kansas 66801.

6. The Defendant Max McCoy is an individual employed by Emporia State University, is sued in his personal capacity and may be served at Emporia State University, Plumb Hall 202K, Emporia, Kansas 66801.

7. The Defendant Allison Garrett is the President of the University, is sued in her personal capacity and may be served at Emporia State University, Plumb Hall 202K, Emporia, Kansas 66801.

8. Venue is properly placed with this Court pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events and omissions giving rise to the Plaintiff's claims occurred in this District and pursuant to 42 U.S.C. § 2000e – 5(f)(3) in that this District is the one in which the alleged unlawful employment practices are alleged to have been committed.

9. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, federal question, and 1343(a)(4), protection of civil rights.

10. The Plaintiff timely filed a Charge of Discrimination against the University with the U.S. Equal Employment Opportunity Commission on January 17, 2019.

11. The Plaintiff timely filed a second Charge of Discrimination against the University with the U.S. Equal Employment Opportunity Commission on April 18, 2019.

12. The U.S. Equal Employment Opportunity Commission issued a "Dismissal and Notice of Rights" to the Plaintiff for both Charges of Discrimination on June 18, 2019. This Complaint is timely filed.

13. The Kansas Human Rights Commission sent the Plaintiff a letter dated July 3, 2019,

for the second Charge of Discrimination he filed against the University that stated that he had exhausted his administrative remedies with that agency.

ALLEGATIONS OF FACT
INTERACTIONS WITH STUDENT "J.J."

14. Brian Schrader, Ph.D. began his employment with the University in 1996 in the Department of Psychology and Special Education within The Teachers College; the name of the department was later changed to the Department of Psychology.

15. Schrader eventually attained the title of Professor at the University.

16. Schrader was not subjected to any disciplinary proceedings – until May of 2017 – and was not disciplined in any manner within the Department or by the University – until later in 2017.

17. In the Spring semester of 2017 at the University, Schrader taught a class, Statistics, which included a student "J.J." in the class.

18. On February 14, 2017, Schrader identified an incident of academic misconduct committed by "J.J." when she cheated on a homework assignment in the Statistics class.

19. During the last week of April, 2017, "J.J." failed a major test in Schrader's Statistics class, leaving large sections entirely blank. Schrader wrote a note on the test when he handed it back to "J.J." for her asking her to meet with him.

20. Schrader and "J.J." meet on May 2, 2017 to discuss her poor performance on the test. On the same day, after their meeting Schrader discovers that "J.J." has cheated again on another homework assignment and sends an e-mail to her to request that they meet again the next day in regard to the homework in question.

21. Because of the second instance of academic misconduct after a warning, "J.J." was facing the possibility of expulsion from the University.

22. The meeting occurred on May 4, 2017.

23. During the meeting, Schrader described the incidents of academic misconduct to "J.J."

24. "J.J." did not deny Schrader's description and began to cry.

25. Schrader then handed "J.J." a facial tissue. In doing so, their fingers briefly and lightly touched.

26.  Later in the meeting, "J.J.'s" demeanor abruptly changed when she learned that there were severe consequences to her academic misconduct that she could not avoid and then left the meeting clearly upset. She later accused Schrader of sex harassment.

## ADMINISTRATIVE PROCEEDINGS

27. On May 5, 2017, "J.J," who is from the Republic of South Korea, spoke with the Office of International Education and campus police about the May 4 meeting.

28. On May 12, 2017, "J.J." submits a formal sex harassment complaint to the University about Schrader's behavior in the May 4 meeting.

29. On May 24, 2017, "J.J." signed a non-retaliation and confidentiality agreement pertaining to her sex harassment complaint.

30. In mid-May or early June, 2017, Schrader also signed a non-retaliation and confidentiality agreement pertaining to "J.J.'s" sex harassment complaint.

31. On June 30, 3017, "J.J." signed a second non-retaliation and confidentiality agreement pertaining to her sex harassment complaint.

32. Lisa Moritz, the Title IX investigator for the University, prepared a report and submitted it to Ray Lauber on July 4.

33. The report by Moritz is filled with inaccuracies and includes Moritz' own theories that are unsupported by facts or reasonable inferences about what occurred.

34. On July 19, 2017, Lauber released a summary of his findings based on Moritz' report dated July 17, 2017, related to "J.J.'s" complaint of sex harassment.

35. Lauber had an open conflict of interest in the matter that involved dealings with Schrader that extended back to 2012 that created a bias against Schrader.

36. Based on a preponderance of the evidence standard, Lauber concluded that Schrader committed an act of sex harassment toward "J.J."

37. On July 25, 2017, David Cordle, University Provost, commenced formal procedures to terminate Schrader's employment at the University.

38. Using a standard of clear and convincing evidence, a committee of tenured faculty at the University found unanimously on November 20, 2017, that Schrader did not commit any act of sex harassment toward "J.J." and thus termination was not warranted.

39. Despite that conclusion, University President Allison Garrett imposed sanctions on Schrader by way of a letter dated December 6, 2017, for a period of five years.

40. Garrett stated in the letter of December 6, 2017, that she agreed with the conclusion of the faculty committee.

41. Beginning in February, 2018, the University student newspaper, "The Bulletin," published several stories and articles regarding "J.J," including quotations from "J.J." that contained false and defamatory statements about Schrader.

42. Neither Cordle nor McCoy took action or sufficient action to ensure that the confidentiality agreement "J.J." had signed would be enforced.

43. On March 28, 2018, Garrett placed Schrader on administrative leave with pay as a result of "new information that has come to our attention." She stated that she was "stepping outside of our standard protocols to share this limited information with you."

44. Garrett also stated in the March 28 letter that, "We will not tolerate inaction or complacency when change needs to be made." Earlier in 2018, Garrett solicited individuals to come forward with complaints against Schrader in a town hall forum.

45. Cordle and Lauber also hand-delivered letters to Schrader dated March 28, 2018, that notified Schrader that he was being placed on administrative leave and stated that the reason for the placement on leave was that the University had received a second complaint of sex harassment from another individual.

46. The only specificity provided by Cordle and Lauber about the second complaint was that Schrader had given the complainant gifts and the date the harassment allegedly began.

47. The letters from Garrett, Cordle and Lauber did not refer to any specific dates, times, locations or the number of alleged incidents; there was no description of the gifts provided.

48. The letters state that the complainant is a female student, "B.A." and that Schrader is not permitted to have contact with her unless facilitated by his Department chair but does not identify the student.

49. Although the leave was with pay, the University denied Schrader the opportunity to teach Summer semester classes for additional compensation, which had been his practice.

50. The subsequent investigation of the second complaint was not impartial because of conflicts of interest among those who investigated the matter.

51. Eventually, Schrader had no alternative but to resign his position with the University.

52. On December 11, 2018, Schrader submitted his resignation to Department Chair Jim Persinger.

53. At various points during the administrative proceedings, the University's administrative rules were not adhered to.

54. During the pendency of the administrative proceedings, Schrader's attempts to find other academic employment at other institutions of higher learning were thwarted by false and defamatory information that the Defendant Garrett and others caused to be published.

55. Schrader has sustained damages, both economic and non-economic.

COUNT I<br>TITLE VII – REVERSE SEX DISCRIMINATION

56. The Plaintiff hereby incorporates by reference Paragraphs 1 through 55 above as though fully set forth herein.

57. The Plaintiff is a member of a protected sex or gender class, specifically, male.

58. The Plaintiff was qualified for the position he was performing and was performing his job satisfactorily.

59. The Plaintiff engaged in the protected activity of opposing discrimination on the basis of sex.

57. The Defendant's stated reasons that caused the constructive discharge were false and pretextual.

58. The Defendant discharged the Plaintiff under circumstances giving rise to an inference of reverse sex discrimination, all in violation of 42 U.S.C. §2000e—2(a)(1) and 2(a)(2) (Title VII).

59. The Plaintiff has sustained damages resulting from the Defendant University's conduct.

WHEREFORE, the Plaintiff requests the Court to enter a judgment in his favor against the Defendant University for back pay, including wage increases and reimbursement of any lost fringe benefits, retirement plan benefits, pension benefits, Social Security contributions, an award of front pay, emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, for punitive damages, for pre-judgment interest, for reasonable attorney fees,

for costs, all in excess of $75,000.00 and for such other and further relief as the Court may deem just and equitable.

## COUNT II
## TITLE IX – REVERSE SEX DISCRIMINATION

60. The Plaintiff hereby incorporates by reference Paragraphs 1 through 55 above as though fully set forth herein.

61. The Plaintiff engaged in the protected activity of opposing sex discrimination.

62. The Defendant discharged the Plaintiff.

63. The Defendant's stated reasons that caused the constructive discharge were false and pretextual.

64. The discharge was motivated by the protected activity such that there was a causal connection between the two in violation of Title IX.

65. The Plaintiff has sustained damages.

WHEREFORE, the Plaintiff requests the Court to enter a judgment in his favor against the Defendant University for back pay, including wage increases and reimbursement of any lost fringe benefits, retirement plan benefits, pension benefits, Social Security contributions, an award of front pay, emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, for punitive damages, for pre-judgment interest, for reasonable attorney fees, for costs, all in excess of $75,000.00 and for such other and further relief as the Court may deem just and equitable.

## COUNT III
## 42 U.S.C. SECTION 1983 – FIFTH AND FOURTEENTH AMENDMENTS
## PROCEDURAL DUE PROCESS (CONFLICT OF INTEREST OR BIAS)
## (DEFENDANTS LAUBER AND CORDLE ONLY)

66. The Plaintiff hereby incorporates by reference Paragraphs 1 through 55 above as

though fully set forth herein.

67. The Fifth and Fourteenth Amendments to the U.S. Constitution provide for procedural Due Process rights of an individual including having investigators and judicial and quasi-judicial decision-makers who are free of any conflict of interest or bias against the individual.

68. The contours of the procedural Due Process rights pertaining to investigators, judicial actors and quasi-judicial actors as applied to this case are clearly established under applicable law.

69. The Defendants Lauber and Cordle subjected the Plaintiff or caused the Plaintiff to be subjected to a deprivation of his procedural Due Process rights by investigating the Plaintiff and committing quasi-judicial acts even though they had conflicts of interest with the Plaintiff and even though they were biased against the Plaintiff.

70. The Defendants Lauber and Cordle acted under color of state law.

WHEREFORE, the Plaintiff requests the Court to enter a judgment in his favor against the Defendants Lauber and Cordle for deprivation of Constitutional rights, back pay, including wage increases and reimbursement of any lost fringe benefits, retirement plan benefits, pension benefits, Social Security contributions, an award of front pay, emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, for punitive damages, for pre-judgment interest, for reasonable attorney fees, for reasonable expert witness fees, for costs, pursuant to 42 U.S.C. § 1988, all in excess of $75,000.00 and for such other and further relief as the Court may deem just and equitable.

COUNT IV
<u>42 U.S.C. SECTION 1983 – FIFTH AND FOURTEENTH AMENDMENTS
PROCEDURAL DUE PROCESS (FAILURE TO FOLLOW PROCEDURES)
(DEFENDANT GARRETT AND CORDLE ONLY)</u>

71. The Plaintiff hereby incorporates by reference Paragraphs 1 through 55 above as though fully set forth herein.

72. The Fifth and Fourteenth Amendments to the U.S. Constitution provide for procedural Due Process rights of an individual including the right to have enforced and applied any state law procedure established as applicable to any state administrative proceeding.

73. The contours of the procedural Due Process rights pertaining to enforcement of applicable state administrative procedures is clearly established under applicable law.

74. The Defendant Cordle subjected the Plaintiff or caused the Plaintiff to be subjected to a deprivation of his procedural Due Process rights by failing to enforce applicable state administrative procedures during the disciplinary process that was carried out.

75. The Defendant Cordle acted under color of state law.

WHEREFORE, the Plaintiff requests the Court to enter a judgment in his favor against the Defendant Cordle for deprivation of Constitutional rights, back pay, including wage increases and reimbursement of any lost fringe benefits, retirement plan benefits, pension benefits, Social Security contributions, an award of front pay, emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, for punitive damages, for pre-judgment interest, for reasonable attorney fees, for reasonable expert witness fees, for costs, pursuant to 42 U.S.C. § 1988, all in excess of $75,000.00 and for such other and further relief as the Court may deem just and equitable.

COUNT V
42 U.S.C. SECTION 1983 FOURTEENTH AMENDMENT
LIBERTY INTEREST – STIGMA PLUS
(DEFENDANTS GARRETT, MORITZ, LAUBER, CORDLE AND McCOY ONLY)

76. The Plaintiff hereby incorporates by reference Paragraphs 1 through 55 above as though fully set forth herein.

77. The Fourteenth Amendment to the U.S. Constitution forbids governmental actors from creating a stigma against individuals that deprives the individual of tangible interests.

78. The inaccurate report of the sex harassment complaint of "J.J." written by Defendant Moritz created a stigma upon the reputation of the Plaintiff.

79. The inaccurate summary of the report of the Defendant Moritz by the Defendant Lauber created a stigma upon the reputation of the Plaintiff.

80. The failure of the Defendant Cordle to enforce the confidentiality agreement signed by "J.J." caused a stigma upon the reputation of the Plaintiff.

81. The failure of the Defendant McCoy to enforce the confidentiality agreement signed by "J.J." caused a stigma upon the reputation of the Plaintiff.

82. The stigma was created in conjunction with findings made against the Plaintiff in the University's administrative proceedings, in conjunction with sanctions imposed on the Plaintiff by the University and in conjunction with the Plaintiff's constructive discharge.

83. The stigma has also deprived the Plaintiff of tangible interests.

84. The stigmatizing charges have been published.

85. The stigmatizing charges are false and are based on information that is false.

86. The hearing before the committee of tenured faculty was not a valid name-clearing hearing because stigmatizing material had already been published internally and was not subject to review in that hearing.

87. The Defendants Moritz, Lauber, Cordle and McCoy acted under color of state law.

WHEREFORE, the Plaintiff requests the Court to enter a judgment in his favor against the Defendants Moritz, Lauber, Cordle and McCoy for deprivation of Constitutional rights, back pay, including wage increases and reimbursement of any lost fringe benefits, retirement plan benefits, pension benefits, Social Security contributions, an award of front pay, emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, for punitive damages, for pre-

judgment interest, for reasonable attorney fees, for reasonable expert witness fees, for costs, pursuant to 42 U.S.C. § 1988, all in excess of $75,000.00 and for such other and further relief as the Court may deem just and equitable.

COUNT VI
TORTIOUS INTERFERENCE WITH PROSPECTIVE
CONTRACTUAL RELATIONSHP OR EXPECTANCY

88. The Plaintiff hereby incorporates by reference Paragraphs 1 through 55 above as though fully set forth herein.

89. The Plaintiff had the expectancy of a contractual relationship in the form of employment with other post-secondary educational institutions of higher learning with the probability of future economic benefit to the Plaintiff.

90. The Defendant University knew, or had constructive knowledge of the expectancy of the Plaintiff's employment with other post-secondary educational institutions of higher learning.

91. Except for the conduct of the Defendant University, the Plaintiff was reasonably certain to have realized the expectancy of employment with another post-secondary educational institution of higher learning.

WHEREFORE, the Plaintiff requests the Court to enter a judgment in favor of him against the Defendant University in excess of $75,000, for punitive damages against any responsible individual pursuant to K.S.A. 75-6105(c), for his costs and for such other and further relief as the Court may deem just and equitable.

COUNT VII
BLACKLISTING

92. The Plaintiff hereby incorporates by reference Paragraphs 1 through 55 above as though fully set forth herein.

93. The Defendant University is an "employer" as that word is used in K.S.A. 44-117.

94. The Defendant University constructively discharged the Plaintiff.

95. The Defendant University has prevented or attempted to prevent by word, sign or writing of any kind whatsoever the Plaintiff from obtaining employment as prohibited by K.S.A. 44-117.

96. The Defendant University is "guilty" of violating K.S.A. 44-117 within the civil action meaning of that word as it is used in K.S.A. 44-119.

97. A criminal conviction is not required to be proved as an element of this claim.

WHEREFORE, the Plaintiff requests the Court to enter a judgment in favor of him against the Defendant University in excess of $75,000, for treble damages pursuant to K.S.A. 44-119, for reasonable attorney fees pursuant to K.S.A. 44-119, for his costs and for such other and further relief as the Court may deem just and equitable.

## COUNT VIII
## CONSTRUCTIVE DISCHARGE

97. The Plaintiff hereby incorporates by reference Paragraphs 1 through 55 above as though fully set forth herein.

98. The terms and conditions of employment became so intolerable for the Plaintiff that a reasonable person would have been compelled to resign from employment with the Defendant University.

99. The Plaintiff has sustained damages.

WHEREFORE, the Plaintiff requests the Court to enter a judgment in favor of him against the Defendant University in excess of $75,000, for his costs and for such other and further relief as the Court may deem just and equitable.

Respectfully submitted,

/s/ Theodore J. Lickteig

        Theodore J. Lickteig #12977
Law Office of Theodore J. Lickteig
12760 West 87th Street, Suite 112
Lenexa, Kansas 66215
913-894-1090
tjllawoffice@planetkc.com
*Attorney for Plaintiff*

## JURY DEMAND

The Plaintiff, by and through undersigned counsel, hereby demands a jury trial on all issues so triable.

Respectfully submitted,

*/s/ Theodore J. Lickteig*
Theodore J. Lickteig #12977
Law Office of Theodore J. Lickteig
12760 West 87th Street, Suite 112
Lenexa, Kansas 66215
913-894-1090
tjllawoffice@planetkc.com
*Attorney for Plaintiff*