IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BRIAN W. SCHRADER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 19-cv-2387-DDC-TJJ |
| | ) |
| EMPORIA STATE UNIVERSITY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff's Motion to Compel (ECF No. 165). Plaintiff asks the Court to compel Defendant Emporia State University to produce documents responsive to certain of Plaintiff's Requests for Production of Documents. As set forth below, the Court grants Plaintiff's motion.

**I.   Relevant Background**

The following background comes from District Judge Crabtree's Memorandum and Order ruling on the motions to dismiss filed by each named Defendant.

> Plaintiff Brian W. Schrader was a professor of psychology at defendant Emporia State University (ESU) for more than 20 years. In 2017, a student in one of his classes filed a sexual harassment complaint against him, triggering a Title IX investigation and, eventually, termination proceedings. After hearing all the evidence from ESU and plaintiff in the Title IX proceeding, a committee of tenured faculty decided that ESU shouldn't terminate plaintiff. But ESU sanctioned him anyway, limiting his ability to interact with students and placing an automatic suspension on his employment should another student file a harassment complaint. And amidst a campus furor about plaintiff remaining an ESU professor—including several public statements from ESU President Allison Garrett about the investigation and the larger culture of sexual harassment on college campuses—that is exactly what happened: another student filed another harassment complaint and ESU immediately placed plaintiff on administrative leave. He eventually resigned while the investigation was pending.[1]

---

[1] ECF No. 127 at 1-2.

Judge Crabtree granted each individual Defendant's motion to dismiss, and he granted ESU's motion in part and denied it in part. As a result, ESU is the only remaining Defendant and two of Plaintiff's claims against ESU survive: (1) Title IX Reverse Sex Discrimination/Gender Bias (Count II), to the extent the claim is premised on gender bias flowing from the Title IX proceeding and resulting discipline; and (2) Tortious Interference with Prospective Contractual Relationship or Expectancy (Count IX).[2]

On March 22, 2022, Plaintiff served his first Requests for Production of Documents on Defendant. Defendant responded and the parties subsequently conferred and were able to resolve several disputes about the adequacy of Defendant's responses. However, the parties were not able to reach agreement on Plaintiff's RFPs that relate to the second sexual harassment complaint filed against Plaintiff. On July 14, 2022, at the parties' request, the undersigned Magistrate Judge conducted a conference to consider their competing positions and provide guidance on the RFPs in dispute.[3] When the parties remained unable to agree on a resolution, Plaintiff timely filed the instant motion.

The Court finds the parties have conferred in an attempt to resolve the issues in dispute without court action, as required by Fed. R. Civ. P. 37(a)(1) and D. Kan. Rule 37.2.

## II.     Scope of Discovery

Federal Rule of Civil Procedure 26(b)(1) sets out the general scope of discovery. As amended, it provides as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative

---

[2] *See id*. at 53 & n.16.

[3] *See* ECF No. 164.

2

>access to relevant information, the parties' resources, the
>importance of the discovery in resolving the issues, and whether
>the burden or expense of the proposed discovery outweighs its
>likely benefit. Information within this scope of discovery need not
>be admissible in evidence to be discoverable.[4]

Considerations of both relevance and proportionality now govern the scope of discovery.[5] Relevance is still to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.[6] Information still "need not be admissible in evidence to be discoverable."[7] The amendment deleted the "reasonably calculated to lead to the discovery of admissible evidence" phrase, however, because it was often misused to define the scope of discovery and had the potential to "swallow any other limitation."[8]

The consideration of proportionality is not new, as it has been part of the federal rules since 1983.[9] Moving the proportionality provisions to Rule 26 does not place on the party seeking discovery the burden of addressing all proportionality considerations. If a discovery dispute arises that requires court intervention, the parties' responsibilities remain the same as under the pre-amendment Rule.[10] In other words, when the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating

---

[4] Fed. R. Civ. P. 26(b)(1).

[5] *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.

[6] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

[7] Fed. R. Civ. P. 26(b)(1).

[8] *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.

[9] *Id.*

[10] *Id.*

that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[11] Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request.[12] Relevancy determinations are generally made on a case-by-case basis.[13]

**III.    Analysis**

With the legal standards in mind, the Court considers the requests for which Plaintiff seeks to compel Defendant to produce documents. The four RFPs at issue are as follows:

> 16. All documents prepared by the investigator, including interview notes, other notes, recordings, and drafts, of the sex harassment complaint of "B.A." against the Plaintiff.
>
> 17. All documents received or obtained by the investigator during the investigation of the sex harassment complaint of "B.A." against the Plaintiff.
>
> 19. All files, including academic and disciplinary files, for the student identified in the Third Amended Complaint as "B.A."
>
> 25. All documents prepared, including interview notes, other notes, recordings and drafts, by Tammy Norman or any other investigator, for the investigation of the sex harassment complaint of "B.A." against the Plaintiff.

Defendant provided the same following response to each of the four RFPs:

> Objection. This request seeks confidential documents that are not relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues and whether the burden or

---

[11] *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

[12] *McBride v. Medicalodges, Inc.*, 250 F.R.D 581, 586 (D. Kan. 2008).

[13] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate*, No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).

expense of the proposed discovery outweighs its likely benefit; and therefore is outside the scope of discovery authorized by Fed. R. Civ. P. 26(b)(1).

**A.  Relevance**

Defendant asserts the information sought in these RFPs is not relevant to either of Plaintiff's remaining counts. First, Defendant contends the information will not tend to make any fact necessary to establish any element of Plaintiff's tortious interference claim more or less probable. Plaintiff disagrees, pointing to information he obtained through non-party discovery which allegedly demonstrates that the second sexual harassment complaint against Plaintiff cost him at least one other job. In the section of his Memorandum and Order discussing and allowing Plaintiff's tortious interference claim to proceed, Judge Crabtree notes that Plaintiff's allegation "raises the plausible inference that ESU either misled [the other university] and didn't reveal that the J.J.[14] proceedings were resolved in plaintiff's favor, or that ESU shared the existence of a second harassment complaint with [the other university] before it shared that information with plaintiff. Either inference plausibly alleges malice."[15] And with the plausibility threshold met, Judge Crabtree allowed Plaintiff's tortious interference claim to proceed.

As a consequence, what Defendant learned about the details surrounding the second complaint of sexual harassment and information about the complainant (*e.g.*, whether she too had issues with academic dishonesty, her relationship with J.J., etc.) is clearly relevant to Count IX.

Second, Defendant contends the information sought by the RFPs is not relevant to Plaintiff's reverse sex discrimination/gender bias claim because it was too remote in time. The dates Defendant wants the Court to consider are May 5, 2017, when J.J. reported sexual

---

[14] J.J. was the first student to report a claim of sexual harassment against Plaintiff. B.A. was the second.

[15] ECF No. 127 at 49.

harassment by Plaintiff; May 12, 2017, when J.J. submitted a formal complaint; July 4, 2017, when Defendant completed its investigation; July 17, 2017, when Defendant's Title IX officer had reviewed the investigation report, prepared a summary and recommendations, and submitted the summary to the Provost; July 25, 2017, by which time the Provost had submitted the summary and his recommendations to the President, and Plaintiff was placed on administrative leave pending the outcome of a hearing before a faculty committee; November 20, 2017, when the faculty committee submitted its findings and recommended to the President that Plaintiff's employment should not be terminated because he did not commit sexual harassment against J.J.; December 6, 2017, when the President ended Plaintiff's administrative leave and told Plaintiff his employment would not be terminated, but he would be placed under restrictions including a return to administrative leave (and subsequent investigation) if ESU received another complaint of sexual harassment or academic misconduct; and March 23, 2018, when ESU received B.A.'s sexual harassment complaint. In Defendant's view, the "Title IX proceedings were concluded and sanctions were imposed on December 6, 2017."[16] Accordingly, Defendant argues, a second sexual harassment complaint made by B.A. more than three months later is irrelevant to whether Plaintiff's gender was a motivating factor in the already-concluded proceedings.

Defendant's position that December 6, 2017 is the ending date for the Title IX proceedings and resulting sanctions is inconsistent with a fair reading of Judge Crabtree's ruling. In allowing Count II to proceed, Judge Crabtree limited Plaintiff's reverse sex discrimination/gender bias claim to "gender bias flowing from the Title IX proceeding and resulting discipline." Judge Crabtree describes Plaintiff's theory under this count as follows:

> Plaintiff's theory, as alleged in his Complaint, is that the faculty committee cleared him of misconduct in the J.J. case, but ESU sanctioned him anyway. That is, the

---

[16] ECF No. 168 at 4.

university placed certain restrictions on his interactions with students and told him that it would suspend him (pending investigation) if another student filed a harassment complaint. A storm of media coverage about the investigation then followed the next semester. This coverage included reporting about a student town hall with [ESU President] Garrett, where she discussed the case and sexual harassment generally and then, according to plaintiff's Complaint, "solicited individuals to come forward with complaints about [plaintiff.]" Doc. 83 at 13 (Third Am. Compl. ¶ 84). Another student then filed a harassment complaint and ESU put plaintiff on administrative leave.[17]

But that is not the end of Judge Crabtree's consideration of Defendant's actions that constitute "resulting discipline." After the faculty committee determined Plaintiff had not violated ESU's harassment policy, "ESU sanctioned plaintiff anyway and put his employment on thin ice"[18] by imposing certain precautionary measures. Judge Crabtree continued his assessment of Plaintiff's allegations in the context of determining whether Count II could proceed:

> The most severe "precautionary measure" was plaintiff's automatic suspension should another student file a harassment complaint. And that is exactly what happened. Gender bias may not be the most plausible explanation for ESU putting plaintiff's employment on thin ice— but it is a plausible inference, especially in light of the campus controversy that followed and led (as plaintiff alleges) to a second harassment complaint producing his automatic suspension. And when that suspension did occur, Garrett "stepp[ed] outside of . . . standard protocols to share" the news with the university student body because of "significant community interest in th[e] matter[.]" Doc. 83 at 12 (Third Am. Compl. ¶ 80). It is plausible to infer that Garrett was responding to external pressure to hold plaintiff accountable for sexual harassment after the campus controversy surrounding the J.J. complaint.[19]

Judge Crabtree's analysis provides an ample basis to conclude that the information sought in RFP Nos. 16, 17, 19, and 25 is relevant to the claim Plaintiff asserts in Count II.

Plaintiff also argues the second complaint plays a role in his theory that he was

---

[17] ECF No. 127 at 36.

[18] *Id.* at 37.

[19] *Id.* at 38.

7

constructively discharged, because backpay is an available remedy in Title IX cases and he must demonstrate he was constructively discharged to recover backpay.[20] Defendant disagrees and contends "the question of whether Plaintiff resigned or was constructively discharged is not at issue and not relevant."[21] Judge Crabtree has held otherwise.[22]

The Court therefore overrules Defendant's objection to RFP Nos. 16, 17, 19, and 25 on the basis they seek irrelevant information.

### B.     Proportionality

Defendant's objection on the basis of proportionality merely recites the language of Federal Rule of Civil Procedure 26(b)(1) without explanation. But in its opposition to the motion, Defendant states in conclusory fashion that the requested documents contain sensitive and confidential information, and the burden of disclosing it outweighs any marginal benefit it may provide to Plaintiff. Defendant refers to the FERPA[23] statute and regulations—again, without showing the responsive documents would be subject to FERPA—and asserts ESU does not disclose confidential information absent written consent of the student or a court order. Finally, Defendant asserts B.A. is a former student from another country who has since returned to her home country whose culture is generally not supportive of young women who are victims of sexual assault and/or harassment, thereby potentially posing a risk to her. Defendant offers no evidentiary support for this assertion.

---

[20] *See Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 70-71 (1992).

[21] ECF No. 168 at 5.

[22] ECF No. 127 at 31 n. 12 ("The court concludes that these allegations, at this stage, sufficiently allege a constructive discharge.").

[23] Family Educational Rights and Privacy Act of 1974, 20 U.S.C. § 1232g, 34 C.F.R. § 99.

The Court rejects Defendant's proportionality objection. Information concerning B.A.'s allegations are clearly important to Plaintiff's theories of relief and damages claim. Plaintiff has no means of obtaining this information other than to request it from Defendant, who has neither alleged nor demonstrated any difficulty or expense in obtaining the requested records. Defendant has not met its burden to show lack of proportionality. And with respect to Defendant's responsibilities under FERPA, this Memorandum and Order constitute the court order Defendant requires.

### C.     Sanctions

Rule 37(a)(5)(A) provides that if a motion to compel is granted, the court must, after giving an opportunity to be heard, require the responding party to pay the movant's reasonable expenses and attorney's fees incurred in making the motion.[24] The court must not order payment, however, if the opposing party's nondisclosure, response, or objection was substantially justified, or if other circumstances make an award of expenses unjust.[25] The Court finds Defendant's objections were not substantially justified, and no circumstances exist which would make an award unjust. Accordingly, no later than **October 3, 2022**, Plaintiff shall file a response setting forth the amount he requests, along with an affidavit itemizing the reasonable expenses and attorney's fees he incurred in bringing the instant motion. Defendant shall have until **October 17, 2022** to file a response thereto. The Court will thereafter enter an order specifying the amount of the award and the time of payment.

---

[24] Fed. R. Civ. P. 37(a)(5)(A).

[25] Fed. R. Civ. P. 37(a)(5)(A)(ii), (iii).  The rule also provides no such payment shall be awarded if the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action.  Fed. R. Civ. P. 37(a)(5)(A)(i).  The Court has found to the contrary.

**IT IS THEREFORE ORDERED THAT** Plaintiff's Motion to Compel (ECF No. 165) is **GRANTED**. Defendant's objections to Requests for Production Nos. 16, 17, 19, and 25 are **OVERRULED.**

**IT IS FURTHER ORDERED THAT** no later than **October 3, 2022**, Defendant shall serve amended responses and documents responsive to Requests for Production Nos. 16, 17, 19, and 25.

**IT IS FURTHER ORDERED THAT** no later than **October 3, 2022**, Plaintiff shall file a response setting forth the amount he requests, along with an affidavit itemizing the reasonable expenses and attorney's fees he incurred in bringing the instant motion. Defendant shall have until **October 17, 2022** to file a response thereto.

**IT IS SO ORDERED.**

Dated this 19th day of September, 2022, at Kansas City, Kansas.

_____
Teresa J. James
U. S. Magistrate Judge